BRUNOT, J.
 

 This is a suit for damages
 

 resulting from an alleged breach of contract by defendants. The plaintiff avers that defendants defaulted on a contract for the purchase of garbanzos, a white bean, grown in Mexico. The contract is evidenced by two letters, one from the plaintiff proposing to sell to defendants a certain quantity of the beans for a fixed cash price and naming the dates on which deliveries shall be made, and one, written by defendants, accepting the garbanzos at the price and upon the conditions named in plaintiff’s letter. The two letters are dated September 17,1920, and September 21, 1920, respectively. From these letters it appears that prior to their dates the defendants had purchased 10,000 bags of garbanzos from the plaintiff and, deliveries under that contract had not been completed. The letters affirm that contract, and the total contract quantity to be delivered' under both contracts was 25 carloads, the deliveries of which were to be made as follows: Three cars during the week ending September 25, 1920, three cars between that date and September 30, 1920, two cars during the first half of October, 1920, five cars in November, 1920, five cars in December, 1920, two cars in January, 1921, and five cars after January, 1921, unless sooner required.
 

 Defendant’s letter of September 21, 1920, contained the following provision:
 

 “The deliveries you set forth in your letter are in accordance with the present sales we have made, but it is understood that if any unforseen -event should happen to prevent us shipping, you will co-operate with us in these premises, holding back deliveries as much as possible in such cases.”
 

 The defendants received and paid for the first 15 cars of garbanzos which were con? signed to them under the contract, but rejected the last 10 cars so consigned, and this suit is for $18,966.66, the net difference between the contract price of these 10 cars of garbanzos and the lesser price plaintiff realized from the resale of them.
 

 The defense is that the Cuban moratorium, which was proclaimed in October, 1920, and the congested freight condition on the docks in Cuban harbors prevented defendants from
 
 *201
 
 shipping to Cuban ports, the only market for garbanzos, and this was the happening of such an unforeseen event as was contemplated by the clause in their letter of September 21, 1920, which we have quoted, supra, and that it entitled them to delays in the deliveries, as called for by the contract.
 

 On January 17, 1921, the plaintiff delivered to defendants the bills of lading for 5 cars of beans. Two days later the defendants wrote to plaintiff stating in their letter that the Cuban moratorium prevented them from shipping, and they claimed that, under the terms of the contract, further deliveries should be delayed. In response to this letter plaintiff asserted that defendants were not prevented by the moratorium from shipping to Cuban ports, and he directed their attention to the difference between shipping to Cuban ports .and the difficulties of financing such shipments under the circumstances, and, in order to relieve the situation as far as possible, offered to accept trade acceptances in lieu of the cash payments required by the contract. Defendants evidently acted upon this suggestion, because on January 24,1921, they received the warehouse certificates for the last 5 cars of beans which, remained to be delivered under the contract. With this certificate and the bills of lading for the 5 cars of beans delivered on January 17, 1921, in their possession, a member of the defendant firm applied to the Canal-Commercial Trust & Savings Bank for trade acceptances. Failing to secure trade acceptances, the defendants returned the bills of lading and warehouse certificate to plaintiff, by mail, with this statement:
 

 “We are not ready to take deliveries of any further garbanzos from you at this time.”
 

 After a delay of some weeks, during which time the defendants had ample oportunity to purchase the beans according to the terms of the contract, but did not avail, themselves thereof, the plaintiff sent his representative, Mr. Berengher, to Cuba .for the purpose of minimizing the damage by selling the beans in that market. Mr. Berengher succeeded in disposing of the beans at a price which netted the plaintiff, after deducting all expenses incurred in making the sales, including the salary of Mr. Berengher, a sum of $18,966.94 less than the price of the beans as fixed in the contract between plaintiff and defendants, and judgment on the main demand was rendered in favor of plaintiff and against defendants, and the individual members of the defendant firm, in solido, for that sum, with legal interest thereon from June 30, 1921, until paid, and for the costs of the suit, and in favor of the defendant firm, on its reconventional demand, and against the plaintiff, for $864.54, with legal interest thereon from November 27, 1920, until paid; From this judgment the defendants appealed. The judgment on the defendants’ reconventional demand was not appealed from; it is not questioned in this court' and it is therefore final.
 

 The record discloses that before the plaintiff sent Mr. Berengher to Cuba, -he formally tendered the 10 cars of beans to defendants, with notice that if the tender was not accepted he would proceed to dispose of the beans for their account. Defendants contend, that the beans were sold below the market price, and that the measure of damages is the difference between the contract price and the market price at the date of tender, in addition to costs and damages resulting from the refusal of the tender.
 

 We have carefully considered, the defenses urged in this suit and have reached the conclusion that defendants defaulted on the contract, without just cause, and are liable for the actual damages plaintiff suffered as a result of defendants’ breach thereof, ¿ñd that the judgment of the district court is correct in this respect, bút we think the learned trial judge erred in awarding plaintiff
 
 k
 
 judgment for the salary of Mr. Berengher during the time he was in Cuba. It is true that,
 
 *203
 
 while there, he -was engaged exclusively in selling the 10 carloads of beans which defendants declined to receive, but Mr. Bereugher was a regular, salaried employee of the plaintiff, and his salary was not an expense incidental to the sale of the beans but would have been earned and paid by plaintiff if the transaction out of which this suit grew had never been entered into. It was, therefore, not an expense which is properly chargeable to the defendants.
 

 The evidence convinces us that the Cuban moratorium did not prevent defendants from Shipping the beans to Cuba and that the clause in defendants’ letter of September 21, 1920, did not contemplate such a condition as was created by that moratorium. The trial judge so held, and we think his ruling is correct.
 

 On the issue as to whether Mr. Berengher received the market price for the beans upon the sale thereof in Cuba, the evidence is not entirely satisfactory. Plaintiff has shown that, under the circumstances existing at the time the sales were made, the best price obtainable therefor was realized. On the other hand, defendants offered quotations issued by the Havana Produce Exchange Association showing a quoted price somewhat higher than the price( obtained by plaintiff, but the learned trial judge correctly held that in the then disturbed financial and business conditions, not -only in Cuba, but throughout the world, sellers and buyers were dealing according to the necessities of the moment and with little regard to the quotations of exchanges; and he cites instances of sales, made ait that time, which support this view. We think his conclusions are correct. There is no question of the good faith of the plaintiff or of the good faith or competency of Mr. Berengher, and, under the circumstances, we concur in the view of the trial judge that Mr. Berengher did all that could reasonably he required of him, and, in this connection, the' following authorities are cited; Armistead v. R. R. Co., 108 La. 171, 32 So. 456; Chattanooga Co. v. Lefebvre, 113 La. 487, 37 So. 38.
 

 “Expenses imposed upon the injured party by-reason of a breach of contract ordinarily form a recoverable element of damages, provided it appears that such expenses were the natural consequences of the breach, and are reasonable, having regard to all the circumstances of the particular ease.” C. J. vol. 17, p. 798 et seq.
 

 There are several minor contentions made, but the conclusions we have reached dispose of the case, and it is not necessary to consider them.
 

 For these reasons, the judgment appealed from is amended by ^ejecting the item of expense for the salary of Mr. Berengher while in Cuba, which appears in debit note No. 15 as services for 7% weeks at $50 per week, or a total of $375, and, as thus amended, the judgment will be affirmed; the cost of the appeal to be paid by appellee.