# SHEPHERD TRACTOR & EQUIPMENT CO. et al. v. PAGE.

## No. 11517.

Circuit Court of Appeals, Fifth Circuit.

Jan. 10, 1947.

Rehearing Denied Feb. 7, 1947.

William K. Young, of Los Angeles, Cal., and J. A. Rauhut, of Austin, Tex., for appellants.

H. Grady Chandler, of Austin, Tex., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

Appellant Shepherd Tractor and Equipment Company was a seller of heavy machinery in Los Angeles, California, and Appellee Page was a construction contractor using heavy dirt-moving machinery, and also a rebuilder and renovator of such machinery for resale in Austin, Texas. In late September, 1943, through one Bishop, of San Francisco, as broker, a list of secondhand machinery which Page was offering for sale, the factory prices on which ran to about $181,000, was brought to the attention of Shepherd Company, which sent one Range to Texas to look at the machinery with a check for $10,000 and a letter to Page which was handed to him by Range about Oct. 8th. The letter stated that the check was to be a deposit and "returned to us in its entirety if the equipment or its price does not meet our approval." It stated that part or all of the equipment might be purchased and that Range had "full authority to act for us in this matter according to the terms of this letter." Range looked at some of the equipment then in use at Olney, Texas, and said he would be interested in purchasing it, with three exceptions. At Austin, where the shops were, some $40,000 (at factory prices) of equipment was inspected which had already been rebuilt. The remainder of the listed equipment was not yet rebuilt and some was in use. Range testifies that he agreed that Shepherd Company would take the equipment at seventy-five per cent of factory price when it had been torn down and all worn parts replaced in accordance with O. P. A. regulations on second hand machinery sold above 55% of factory prices with a war-

ranty for sixty days, and because Shepherd Company would have to sell to its customers on those terms it was necessary that he see the work done on each piece and know it had been done, and the agreement was that a purchase order was to be given on each piece only after he had accepted each rebuilt machine. Page testifies that he would not take the $10,000 check till Range had bought the entire list (with a few items changed), and that all was to be rebuilt in accordance with O. P. A. regulations and Range had the right to see it done, but that Range positively and finally accepted $40,000 of equipment at Austin already rebuilt, but Shepherd Company failed to send the agreed purchase orders, and on Oct. 16th Page wrote Shepherd Company stating his understanding of the agreement and that the $40,000 of equipment was ready for purchase orders and that he had refused several offers on part of the equipment since Range inspected it, and he was not agreeable to hold the equipment longer unless he had "satisfactory arrangements as to the acceptance and payment of the entire list less exceptions listed above." This letter indicates that all the equipment had not been accepted, and it appears to be a threat on Page's part to end the contract unless the entire list was satisfactorily arranged for. A telephone communication followed, about which there is conflict in the evidence, but the most that can be made of it is that Range would return to Austin and carry out his agreement, and that Page requested that this be confirmed by letter but it was not so confirmed and the $40,000 of equipment was not ordered out. Page, as above stated, was to receive seventy-five per cent of factory price on the equipment. Shepherd Company expected to resell it at the O. P. A. ceiling price of 85%. Page resold most of it to others for 80 percent; but $17,900 of it he had not sold at the time of the trial, March 1, 1945, and thought its market value only 25 per cent of factory prices. The $10,000 check, which was cashed Oct. 18, 1943, bore this indorsement: "Deposit on equipment under terms of Shepherd Tractor letter of Sept 30, 1943, to be returned if no equipment purchased."

Shepherd Company sued Page for the $10,000 as money had and received to plaintiff's use. Page counterclaimed that equipment had been purchased which Shepherd Company failed and refused to take and pay for; and that the $10,000 was liquidated damages, or if not, Page had been damaged $15,000. The judge, sitting without a jury, held Shepherd Company had contracted to buy the entire listed equipment, for 75 per cent of factory prices, to be reconditioned according to O. P. A. regulations; that the $10,000 was not liquidated damages but to be applied on the price; that Page was ready, able and willing to carry out the agreement but Shepherd Company informed Page about Nov. 1, 1943, it would not take and pay for the equipment. Damages were fixed at $10,596, and judgment given Page for $596 over and above the $10,000.

We do not think the judgment is sustained by the evidence as to the agreement reached or as to the damages found. The evidence impresses us as indicating rather a failure to attain a full meeting of minds. Page understood that the entire list was bought outright, Page being under obligation to rebuild it according to O. P. A. standards. Range understood that each piece was to be rebuilt to Range's satisfaction, he to give purchase orders for each piece after his examination and acceptance. Page of course expected to rebuild it all anyhow, since that was his line of business. One intended to make an entire sale, and the other only several purchases. Page is not in all details supported by Bishop, who had a five percent commission involved. Range is supported by a disinterested witness Crow, and by Allison, an officer of Shepherd Company. The letters all indicate that Range was to have a right to accept or reject after rebuilding if not satisfactory to him. We think that the only certain purchase and final acceptance of any machines that can be said to be proven is the $40,000 worth which had already been rebuilt when Range was at Austin and when Page claims Range bought the whole list. Page in his cross-examination testified: "He (Range) said he would give me purchase orders after he had inspected and accepted the equip-

ment and I ran it through the shop. That is in addition to the equipment we already had rebuilt. We had some that we already had rebuilt. He took the $40,000, and he was to get me purchase orders, and then we was to run the remainder of the stuff through the shop and as he inspected it he would give purchase orders." It does not appear that any except the $40,000 was "run through the shop" and offered for inspection. Range claims that further things he required to be done to the $40,000 were not done. Page says they were. These however are all questions of fact which may be better examined on another trial.

 As to damages, if the $40,000 worth of equipment already rebuilt at Austin be indeed all that Range really bought, there was no loss; for Page later sold it at 80 percent of factory prices, the contract price with Shepherd Company being only 75 per cent. If it be finally determined on further trial that the entire list was definitely accepted as purchased as an entire contract, then the loss on the whole lot is to be considered, crediting any profit made on some articles. Since we are dealing with an anticipatory breach of an executory contract, the resales are only evidence of the market price of what was resold. 46 Am.Jur., §§ 566, 582. They are not conclusive on the buyer who in this case was not notified of the intention to resell and did not participate. Page, however, cannot claim the market value was less than he got. He is, however, entitled to deduct his reasonable and necessary expenses directly incurred in the resale. These do not include any part of his general business expenses, nor even the time of a salaried employee who made the sales. 46 Am.Jur., Sales, § 570; Alonzo v. Westfeldt Bros., 163 La. 198, 111 So. 675. Page claimed and the court allowed an estimated expense of ten per cent. Page's evidence is this: "It cost something to sell it. I don't know what the cost was. I would estimate ten per cent. * * * That includes my office people, employees that are employed in the sale of equipment, and cost of telephone calls." It would seem according to the cited authority that only the telephone calls are allowable and their amount is not shown.

The market value of the unsold equipment at the date of breach is a matter of opinion. It does not appear whether it was rebuilt and actually offered for sale or not. Page in his interrogatories at first expressed the opinion it was then worth 40 per cent of factory prices. At the trial he lowered his estimate to 25 per cent. Page said there was no demand for it in Austin. A market price elsewhere might be shown, with freight deducted to that market. Range testified to a value of 85 per cent in California on some things and 70% on others, if properly rebuilt. The court apparently ruled this evidence out, erroneously.

On the present evidence the judgment is wrong. It is considered and adjudged that it be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.